IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-898

Filed 6 August 2024

Guilford County, Nos. 22 JA 606-07

IN THE MATTER OF: A.K., L.K.

Appeal by respondent-appellant-mother from orders entered 8 February 2023 and 14 June 2023 by Judge Angela Foster in District Court, Guilford County. Heard in the Court of Appeals 17 June 2024.

> *Mercedes O. Chut for petitioner-appellee Guilford County Department of Health and Human Services.*
>
> *Alexandria G. Hill for the guardian ad litem.*
>
> *Emily Sutton Dezio for respondent-appellant-mother.*
>
> *J. Thomas Diepenbrock for respondent-appellee-father.*

STROUD, Judge.

Respondent-appellant-mother raises several arguments on appeal from an order adjudicating her children neglected juveniles and the resulting disposition order. As the trial court erred by denying Respondent-appellant-mother's request to release her appointed counsel and to be represented by her retained counsel, we must vacate the Adjudication and Disposition Orders.

## I. Factual Background & Procedural History

The Guilford County Department of Health and Human Services ("DHHS")

became involved with this family on 1 September 2022 when DHHS received a report that Respondent-appellant-mother ("Mother") threw plates and broke furniture in the presence of her minor children, "Link,"[1] then age 7 years, and "Ady," then age 4 years. According to the petition, the report alleged the Greensboro Police had responded to a "family disturbance" at Mother's home "where there were plates and chairs found broken." The report also alleged that Mother suffered from mental health issues, including delusions, and had been keeping both children confined to their rooms without access to education or medical care, such that Link and Ady displayed poor language and social skills. The petition further alleged that a social worker attempted to visit the home on 1 September 2022, and she had been informed that Mother spoke Albanian, so she contacted the language line in case she needed assistance in communication. No one was at the home on that day. A social worker attempted to visit the next day also, but again no one was at home.

On 7 September 2022, the social worker visited the home again and was able to speak to some of the family members at their residence. Mother refused to come out of her bedroom during the social worker's visit, and when the social worker tried to obtain information about the juveniles, Mother refused and yelled for the social worker to leave. When Mother threatened to call law enforcement, the social worker went outside and called law enforcement herself. While awaiting assistance, the

---

[1] Pseudonyms are used to protect the identities of the juveniles and for ease of reading.

social worker observed Mother step outside the home, "shouting [and] saying that she was fearful of her life" and acting "paranoid" and "confused."

Mother was back inside her bedroom when officers arrived. Eventually the officers were able to persuade Mother to allow them to see and speak to the juveniles, who were largely uncommunicative and only gave the officers their names. The social worker was required to stand at the edge of the home's driveway, too far away to assess the appearance of the children or speak to them. The social worker did talk to the juveniles' maternal grandmother, who initially seemed coherent and expressed concern about the children's wellbeing but later appeared to become confused. The maternal uncle, also a resident in the family home, told the social worker that the grandmother suffered from schizophrenia.

Due to the social worker's inability to investigate the report adequately, she did not believe the juveniles could safely remain in the home. The social worker's supervisor contacted the juveniles' father, who wanted to retrieve Ady and Link, but he was living in Michigan and not immediately able take custody of the children. As a result, on 8 September 2022 the social worker filed juvenile petitions alleging neglect and obtained orders placing both children in the nonsecure custody of DHHS. On the Summons issued to Mother, a hearing date for 9 September 2022 was set and a provisional attorney for Mother, Brett Moore, was appointed by the trial court.

On 9 September, the trial court held a hearing on continued nonsecure custody; the order from this hearing was filed on 10 October 2022, continued nonsecure

custody of the children with DHHS, and also included several provisions including some addressing the cultural needs of the children. For example, the continued nonsecure custody order provided that "the children are of the Islamic/Muslim faith and do not eat pork," that "the juveniles shall not attend any religious services other than Islamic services," and that "all visits are to be conducted in English." The "pre-adjudication, adjudication, and disposition" hearing was scheduled for 9 November 2022.

Mother retained Mr. Amro Elsayed, an attorney from Forsyth County, to represent her and on 7 November 2022, he filed a notice of appearance to represent Mother and served the notice by fax and email on opposing counsel and the GAL.

On 9 November 2022, Mother, Father, court-appointed counsel for both, and Mr. Elsayed were present[2] for the scheduled hearing on "pre-adjudication, adjudication, and disposition." The trial court entered an order to continue ("Continuance Order") this hearing, noting it was continued with the consent of all parties. The Continuance Order indicates the trial court had *sua sponte* appointed a GAL for Mother. The Continuance Order does not indicate an evidentiary hearing was held on 9 November 2022. The Continuance Order was filed on 9 December 2022 and states it was "so Ordered this the 9th day of November, 2022; Signed this the 7 day of Dec., 2022." According to this Continuance Order:

> Preadjudication, Adjudication and Disposition hearing

---

[2] Father lives in Michigan and participated by way of video conference.

scheduled on this date pursuant to G.S § 7B-803 and based upon a review of the court file and the argument of counsel, the Court finds and concludes as follows:

. . . .

[x] The parties consent to continue this matter.

. . . .

[x] For good cause shown, and justice requires, the matter should be continued for hearing.

. . . .

[x] For extraordinary circumstances (N.C.G.S. § 7B-803) necessary for:

>  (a) [x] the proper administration of justice; and/or

>  (b) [x] in the best interests of the juvenile(s).

[x] **Other:** The court finds that based on the allegations in the petition and the mother's inability to understand the proceedings and cultural barriers the mother is in need of a Rule 17 GAL to assist the mother in these proceedings. Lisa Grigley is appointed as Rule 17 GAL for mother [ ]."

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED:**

1. This matter is hereby continued and placed on the **December 9, 2022,** Session of District Juvenile Court for Guilford County **(Greensboro Division) for Pre-Adjudication & Adjudication** hearing.

Therefore, according to the Continuance Order, the trial court considered only "the court file and the argument of counsel" in the decision to continue the hearing and to appoint a GAL for Mother. We presume the trial court's order reflects the proceedings on 9 November 2022 correctly, and according to the order, no evidentiary

hearing was held but the hearing scheduled for 9 November 2022 was *continued.* The trial court heard arguments from counsel and considered documents in the court file, but arguments of counsel are not evidence. *See Blue v. Bhiro*, 381 N.C. 1, 6, 871 S.E.2d 691, 695 (2022) ("Notably, it is axiomatic that the arguments of counsel are not evidence." (citations and quotation marks omitted)).

On 17 November 2022, the trial court entered an "Order to Appoint, Deny, or Release Guardian ad Litem (for respondent)[;]" ("GAL Order") this order was on a form, AOC-J-206, Rev. 10/13. (Capitalization altered.) The typed date on the GAL Order is 9 November 2022, so it appears this order is a more formal order memorializing the appointment of the GAL as stated in the Continuance Order, although the GAL Order does not indicate that it was based upon any specific hearing date. The GAL Order has no added text other than the case caption, name of Mother, date, name of the appointed GAL, and "cc: Lisa Grigley" and marking the boxes on the form; it states:

> Relevant to the inquiry regarding appointment of a Guardian ad Litem for the above-named respondent, the Court finds as follows:
>
> 1. The Court has jurisdiction over the parties and subject matter.
>
> 2. Based on the evidence presented, the Court makes the following findings of fact:
>
> . . . .
>
> b. [Mother] is incompetent in accordance with G.S. 1A-1,

Rule 17, based upon the following:

The blank area of the form for findings of fact is entirely empty. The trial court made a conclusion of law by marking box 2, concluding "[Mother] is incompetent in accordance with G.S. 1A-1, Rule 17."

The pre-adjudication and adjudication hearing was held on 9 December 2022. At the start of the hearing, the trial court addressed Mother's request to replace her appointed counsel with Mr. Elsayed. Mr. Elsayed was present at the hearing and participated in this portion of the hearing. Mr. Elsayed had filed his notice of appearance before the 9 November 2022 court date and had appeared on that date. Counsel and the trial court put on the record the discussions they had at the 9 November court date regarding Mother's request to be represented by Mr. Elsayed. The district court denied Mother's request to be represented by Mr. Elsayed. The adjudication hearing on the neglect petitions immediately followed.

In an order entered 8 February 2023, the court adjudicated Ady and Link to be neglected juveniles. The disposition hearing was originally set for 3 February 2023 but was continued several times and was conducted on 26 and 28 April 2023; the court entered an order on 14 June 2023 that kept the juveniles in DHHS custody with a plan for reunification. Mother gave timely notice of appeal from the Adjudication

and Disposition Orders.[3]

## II.    Analysis

Mother makes several arguments on appeal:  (1) the district court erred in appointing a GAL for Mother; (2) the district court erred by refusing to permit Mother to be represented by retained counsel instead of her court-appointed counsel; and (3) several findings of fact in the Adjudication Order are unsupported by the evidence, and there are insufficient findings to support a conclusion of neglect.  As we must vacate the Adjudication and Disposition Orders based upon the trial court's denial of Mother's right to be represented by her privately retained counsel instead of her court-appointed counsel, we need not address the merits of the Adjudication or Disposition Order but must vacate both and remand for new hearing.

### A. Jurisdiction

Mother filed timely notice of appeal from the Pre-adjudication and Adjudication Order and the Disposition Order and we have jurisdiction to review these orders under North Carolina General Statute Section 7B-1001(3).  *See* N.C. Gen. Stat. § 7B-1001(3) (2023) ("Right to appeal. (a) In a juvenile matter under this Subchapter, only the following final orders may be appealed directly to the Court of Appeals: . . . (3) Any initial order of disposition and the adjudication order upon which

---

[3] Respondent-father participated in the hearing but did not give notice of appeal. Instead, Father has filed an appellee brief, asking this Court to uphold the adjudication and disposition orders.

it is based."). DHHS and Father contend Mother did not appeal from the orders appointing the GAL, noting both the Continuance Order and the GAL Order are not appealable under North Carolina General Statute Section 7B-1001(3). DHHS also contends that "Mother's efforts to cast those orders as invalid because they lack proper findings and conclusions lack merit."

It is correct that interlocutory orders such as a Continuance Order and the GAL Order are not appealable orders under North Carolina General Statute Section 7B-1001(3). *See generally* N.C. Gen. Stat. § 7B-1001 (listing which orders in a juvenile matter are appealable directly to this Court, which does not include a continuance order or order appointing a GAL). However, Rule 2 of our Rules of Appellate Procedure "allows an appellate court to suspend the Rules of Appellate Procedure and reach the merits of an unpreserved issue in a case pending before the court." *State v. Ricks*, 378 N.C. 737, 740, 862 S.E.2d 835, 838 (2021) (citations, quotation marks, and brackets omitted). "An appellate court, however, may only invoke Rule 2 in exceptional circumstances when injustice appears manifest to the court or when the case presents significant issues of importance in the public interest." *Id.* (citations, quotation marks, ellipses, and brackets omitted).

Although we would be inclined to invoke Rule 2 to address Mother's argument as to the appointment of her GAL, given the importance of her rights as a parent and the complete absence of findings of fact or evidence to support appointment of a GAL, we are unable to review this issue without a transcript of the 9 November 2022

hearing as we are unable to determine if Mother objected to the appointment of the GAL. But we note Mother's concern regarding the appointment of the GAL is intertwined with her argument regarding the trial court's refusal to allow her to be represented by retained counsel of her choice.

However, the trial court's ruling regarding counsel is clearly addressed in the Adjudication Order which was properly noticed for appeal, and we have the transcript for this hearing. The issues regarding appointment of the GAL and representation by retained counsel are somewhat related. Mr. Elsayed filed his notice of appearance on 7 November 2022, and he first appeared in court at the 9 November 2022 hearing. The GAL Order was not filed until 17 November 2022, also after Mr. Elsayed filed his notice of appearance and appeared in court on 9 November. Thus, before the trial court entered the GAL Order for Mother on 17 November 2022, Mother had retained an attorney to represent her, but the trial court refused to allow Mr. Elsayed to represent her, based in part upon the opinion of Mother's GAL that Mother should be represented by Mr. Moore, her court-appointed attorney, despite the fact Mother had retained Mr. Elsayed before the issue of appointment of a GAL for her had come up. But in summary, because we do not have a transcript of the 9 November 2022 court date, our review will be limited to the trial court's denial of Mother's right to be represented by retained counsel of her choice.

## B. Refusal to Permit Retained Counsel to Represent Mother

Mother contends that "[t]he right for a litigant to select her own attorney is

protected by N.C.G.S. 7B-602(a). The trial court's requirement that [Mother's] counsel be approved by the Court was error and violated [her] due process rights." Mother argues the denial to be represented by Mr. Elsayed was also a violation of her constitutional rights.

The GAL for the children contends Mother is not entitled to review of this issue because

> the Pre-adjudication Order reflects a notice of appearance was filed by Amaro Eslayed. (sic) There the court inquired into the substitution of counsel for . . . Mother. . . . Mother, however, has not appealed the Pre-Adjudication Order. And the parties have not been provided a transcript of that portion of the proceedings.

DHHS also contends that "the trial court addressed Mr. Elsayed's qualifications and denied her request to substitute him for her court-appointed counsel . . . in the 9 November 2022 hearing" for which we do not have a transcript. But the record page cited by GAL as the "Pre-adjudication Order" is actually the "Pre-Adjudication *and* Adjudication Order;" there was no separate pre-adjudication order entered. Mother did properly file notice of appeal from the Adjudication Order. In addition, the record shows Mr. Elsayed did appear at the 9 November 2022 hearing, and at the beginning of the 9 December 2022 hearing Mr. Elsayed renewed his request to represent Mother, and the trial court and counsel placed on the record a description of the 9 November discussion regarding Mr. Elsayed's appearance as well as the trial court's rationale for denying his request. We have a transcript for this

portion of the proceedings and the trial court made findings of fact on Mother's request for Mr. Elsayed to represent her.

We have been unable to find any prior cases addressing a trial court's refusal to allow a respondent-parent to be represented by retained counsel where the retained counsel has filed a notice of appearance and appeared in court for a hearing. But in *In re K.M.W.*, addressing a parent's right to counsel based on statutory criteria, our Supreme Court has stated the standard of review is *de novo*:

> A trial court's determination concerning whether a parent has waived his or her right to counsel is a conclusion of law that must be made in light of the statutorily prescribed criteria, so we review the question of whether the trial court erroneously determined that a parent waived or forfeited his or her statutory right to counsel in a termination of parental rights proceeding using a *de novo* standard of review.

376 N.C. 195, 209-10, 851 S.E.2d 849, 860 (2020).

As noted, Mother also contends the trial court's refusal to allow her to be represented by retained counsel violated her constitutional due process rights. The standard of review "where constitutional rights are implicated" is also *de novo*:

> The general rule that *de novo* review is appropriate in cases where constitutional rights are implicated, as they are here, reinforces our determination that the de novo standard of review applies here. *See Piedmont Triad Regional Water Authority v. Sumner Hills Inc.*, 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001) ("It is well settled that de novo review is ordinarily appropriate in cases where constitutional rights are implicated."). Under the *de novo* standard of review, the court considers the matter anew and freely substitutes its own judgment for that of the

lower tribunal.

*Hall v. Wilmington Health, PLLC*, 282 N.C. App. 463, 475, 872 S.E.2d 347, 359 (2022)

(citations and quotation marks omitted).

The GAL argues we review this issue for abuse of discretion. The GAL cites several unpublished cases to support this claim, without compliance with North Carolina Rule of Appellate Procedure 30(e)(3). *See* N.C. R. App. P. 30(e)(3) ("An unpublished decision of the North Carolina Court of Appeals does not constitute controlling legal authority. . . . When citing an unpublished opinion, a party must indicate the opinion[']s unpublished status."). In addition, all of the cases cited, published or unpublished, address a respondent's (or criminal defendant's) request to substitute new appointed counsel for the appointed counsel already representing the respondent. We do review the trial court's ruling on a request for substitution of appointed counsel for abuse of discretion, but that is not the issue in this case. *See State v. Glenn*, 221 N.C. App. 143, 148, 726 S.E.2d 185, 189 (2012) ("Absent a showing of a Sixth Amendment violation, we review the denial of a motion to appoint substitute counsel under an abuse of discretion." (citations, quotation marks, and brackets omitted)). The GAL also relies on cases addressing a defendant's motion to continue a case to have time to retain a private attorney, where the defendant was already represented by appointed counsel. Again, we review that type of ruling for abuse of discretion, *see State v. Holloman*, 231 N.C. App. 426, 429-30, 751 S.E.2d 638, 641 (2013) (reviewing a defendant's motion to substitute counsel from an appointed

attorney to a retained one under an abuse of discretion standard), but Mother did not move to continue the hearing. Mr. Elsayed was present for court on 9 November 2022 and again on 9 December 2022 and neither he nor Mother requested continuance of the 9 December 2022 hearing.

Here, Mother's argument is primarily based upon North Carolina General Statute Section 7B-602(a) as she contends the trial court failed to comply with a statutory mandate and thus deprived her of her right to be represented by retained counsel. We therefore review this issue *de novo*. *See* N.C. Gen. Stat. § 7B-602(a)(3) (2023); *see also In re N.L.M.*, 283 N.C. App. 356, 377, 873 S.E.2d 640, 652 (2022) ("This Court reviews de novo whether a trial court correctly adhered to a statutory mandate and, if there was error, whether such error was harmless." (citation omitted)).

It is well-established that a parent in an adjudication or termination of parental rights case is entitled to counsel of their choice. *See* N.C. Gen. Stat. § 7B-602(a)(3). North Carolina General Statute Section 7B-602 sets out the right to counsel, including the right to be represented by retained counsel:

> (a) In cases where the juvenile petition alleges that a juvenile is abused, neglected, or dependent, the parent has the right to counsel and to appointed counsel in cases of indigency unless that person waives the right. When a petition is filed alleging that a juvenile is abused, neglected, or dependent, the clerk shall appoint provisional counsel for each parent named in the petition in accordance with rules adopted by the Office of Indigent Defense Services, shall indicate the appointment on the juvenile summons or attached notice, and shall provide a copy of the petition and summons or notice to the attorney. At the first

hearing, the court shall dismiss the provisional counsel if the respondent parent:

> (1) Does not appear at the hearing;
>
> (2) Does not qualify for court-appointed counsel;
>
> (3) Has retained counsel; or
>
> (4) Waives the right to counsel.

> The court shall confirm the appointment of counsel if subdivisions (1) through (4) of this subsection are not applicable to the respondent parent.

N.C. Gen. Stat. § 7B-602(a). "The use of the word 'shall' by our Legislature has been held by this Court to be a mandate, and the failure to comply with this mandate constitutes reversible error." *In re Z.T.B.*, 170 N.C. App. 564, 569, 613 S.E.2d 298, 300 (2005).

After the filing of the petitions for Link and Ady, Mother was assigned provisional appointed counsel, Mr. Moore. Before the first scheduled hearing after the initial nonsecure custody hearings, on 7 November 2022, Attorney Amro Elsayed filed a notice of appearance for Mother. Mr. Elsayed also appeared at the 9 November 2022 court date. At the 9 December hearing, Mother's court-appointed counsel "put on the record how we got here with three attorneys." Mr. Moore said that "upon filing of the petition" on 8 September, he was "appointed to be provisional counsel for the mother, went through a nonsecure custody hearing, and at the subsequent nonsecure custody hearing, an Attorney Elsayed had made it known to myself that he would intend to enter the case" and then he filed a notice of appearance and appeared in

court at the next nonsecure custody hearing.

The trial court made several findings of fact in the Adjudication Order regarding Mother's request to substitute counsel. These findings of fact are not challenged and are binding on appeal. *See In re J.S.*, 374 N.C. 811, 814, 845 S.E.2d 66, 71 (2020) ("Unchallenged findings of fact are deemed supported by competent evidence and are binding on appeal." (citation and quotation marks omitted)).

> 7. After inquiry of the Court, the court makes the following findings regarding Attorney Elsayed's appearance in this matter:
>
> a. The Court made an inquiry of counsel's experience representing parents in Abuse Neglect and Dependency (A/N/D) cases.
>
> b. Upon inquiry, the Court found Mr. Elsayed did not have any requisite experience or basic knowledge of Chapter 7B of the North Carolina General Statu[t]es to represent parents in A/N/D cases.
>
> c. The Court has concerns if Attorney Elsayed were to represent [Mother], [Mother] would suffer irreparable harm to her parental rights and would be in danger of having her parental rights terminated which is not the intent of the Department at this time.
>
> d. The Department has indicated that the current plan for the family is reunification.
>
> e. That given Attorney Elsayed's inexperience representing clients in A/N/D cases and the Department's intent to reunify the family, Mr. Elsayed's representation of [M]other would most likely not be the desired outcome.
>
> f. That Court finds despite the fact that Attorney Elsayed is retained, that his representation would be detrimental to [M]other in this case due to his inexperience

representing parents in A/N/D cases.

> g. That Rule 17-GAL attorney, Lisa Grigley requested Attorney Brett Moore remain counsel for [M]other.

> h. Therefore, the court finds Attorney Elsayed does not require the requisite experience or competence to represent parents in A/N/D cases.

> i. The court finds that it is in the best interest of [M]other that Attorney Brett Moore remains the court appointed attorney for [M]other and Attorney Amaro (sic) Elsayed is released from this case.

Thus the trial court determined Mr. Elsayed was not *qualified* to represent Mother and did not allow Mother to be represented by her retained counsel. The trial court explained that after the 9 November 2022 hearing when Mr. Elsayed first appeared to represent Mother, it had determined he was "not qualified" to represent Mother:

> This Court made an inquiry as to the experience to work in this courtroom because not anyone is allowed to work in here because of its specialized nature. It is extremely different from any courtroom in this building. Upon inquiry, the Court discovered that counsel had not had any experience in working a DSS case, which is what this courtroom is, and the Court became quite concerned that the possibility of moving to TPR within a year, which is the termination of parental rights would get there if we did not have an experienced attorney representing the mother in this case.

> Therefore, the Court made a decision that Mr. Moore would continue representing the mother in reference to this case and the attorney would not be appointed to represent the mother in this case, that even though the attorney stated that he is retained, he lacks the experience

> to work this case. And the Court felt that and continues to feel that that could be extremely, not could be, would be detrimental to the mother in this case, and we could end up and most likely would end up terminating her parental rights, which is not the intent of the Department of Health and Services at this time.
>
> The Department has made it known that reunification, the children's reunification with the mother is of utmost importance, and that is what they want to do. The Court found that given that the attorney has no experience in representing DSS clients that that most likely would not be the outcome and, therefore, the Court made the decision that he is unqualified to work in this courtroom without meeting the requirements of the local rules in reference to working in DSS court.

Mr. Elsayed specifically argued to the trial court that "I'm not appointed, I'm retained, and there is no standards to qualify me."

Mr. Elsayed was correct. While the trial court did not state a specific "local rule" it was relying on, the 18th Judicial District has "Local Rules Governing Abuse, Neglect, and Dependency and Termination of Parental Rights Cases." *See generally* Administrative Order Amending Local Rules Governing Abuse, Neglect, Dependency and Termination of Parental Rights Proceedings, Guilford Cnty. (Apr. 1, 2021). Rule 4, "Appointment of Counsel, Guardian ad Litem for Parent, and Conflict Guardian Ad Litem – Attorney Advocate Lists[,]" contains over three pages of rules governing the requirements, experience, and training for an attorney to be on the "list" of court-appointed attorneys for indigent parents in that district. *See id.*, Rule 4. But these requirements apply only to qualification for an attorney to be on the

court-appointed list; these rules do not apply to privately retained counsel. *See id.* Rule 4.01 states "[t]he clerk of court shall maintain the list of attorneys *eligible to be appointed* to represent parents[.]" *See id.*, Rule 4.01 (emphasis added). Further, Rule 6 is titled "Court Appointed Attorney – Continuation of Representation" and is again clearly applicable to court-appointed attorneys, not privately retained ones. *See id.*, Rule 6. Mr. Elsayed was not requesting to be appointed by the trial court to represent Mother; he was retained by her. The only required credential or qualification for an attorney to represent a respondent-parent is a valid license to practice law in North Carolina, and there is no dispute that Mr. Elsayed is an attorney licensed to practice in North Carolina.

A large part of DHHS' argument is that the trial court did not err by refusing to allow Mr. Elsayed to represent Mother because trial courts have "the inherent authority or power to regulate the attorneys appearing before them." However, the two cases cited by DHHS, *Rosenthal Furs, Inc. v. Fine*, 282 N.C. App. 530, 540, 871 S.E.2d 153, 160 (2022), and *Sick v. Transylvania Cnty. Hosp.*, 364 N.C. 172, 182, 695 S.E.2d 429, 426 (2010), involve attorneys where they were "engaged in unethical or potentially unethical conduct[.]" But there is no argument or indication that Mr. Elsayed acted unethically in any manner. Our record indicates Mr. Elsayed acted appropriately in his court appearances in this case and nothing indicates he would be acting unethically by representing Mother, even assuming he lacked the specific experience in juvenile cases as would be required by the Local Rules for an attorney

on a court-appointed list.

DHHS also contends it was possible Mr. Elsayed's representation of Mother could violate the North Carolina Rules of Professional Conduct, Rule 1.1, as his lack of experience could render him incompetent to handle such a case. *See* N.C. R. Prof'l Conduct 1.1 ("Competence"). However, merely asserting an attorney is inexperienced, although licensed to practice law in this State, and may not provide competent legal services is not a sufficient basis to deny a motion to substitute counsel. Every attorney has a first case in any specific area of law. If the trial court had unrestrained inherent authority to deny a party's request for representation by a privately *retained* attorney based only on an attorney's lack of a certain amount of experience in a particular field of law, a trial court could essentially require all attorneys appearing in that court to have some specific level of experience to appear as counsel for a client who has privately retained them; inherent authority simply does not go this far. We do not disagree with the trial court's statements regarding the specialized nature of abuse, neglect, and dependency proceedings, but the standards for court-appointed attorneys are simply not applicable to privately retained attorneys. Thus, the cases cited by DHHS involving the trial court's inherent authority are inapposite to this case.

We also note that the trial court found that "the Rule 17-GAL attorney, Lisa Grigley requested Attorney Brett Moore remain counsel for [M]other." We have serious concerns regarding the appointment of a GAL for Mother, without prior notice

or an opportunity to be heard, but as noted, due to the lack of a transcript for 9 November 2022 we are unable to review the GAL Order. But as relevant to the issue of Mother's choice of counsel, Mother's Rule 17 GAL also objected to allowing Mr. Elsayed to represent Mother. Even if we assume that the appointment of the GAL was proper, the GAL based her objection to Mr. Elsayed's representation on the same basis as the trial court – Mr. Elsayed's lack of experience in A/N/D cases based upon his lack of qualification under the Local Rules to serve as court-appointed counsel. Further, the trial court found that Mother was unable to choose her counsel because she was incompetent; the trial court found Mr. Elsayed did not have the requisite training and experience to represent Mother in a juvenile case under the local rules. Since the trial court made no findings at all in the GAL Order, we are unable to ascertain exactly why Mother needed a GAL or if her incapacity would have interfered with her ability to select counsel.[4] In addition, since Mother had not yet had a full evaluation of her mental health and did not testify, we have no information in the record upon which to assess why the trial court determined Mother needed a

---

[4] According to the Continuance Order, the trial court determined Mother needed a GAL based upon her "inability to understand the proceedings and cultural barriers." The record also shows Mother is Albanian and Muslim, and English is not her first language. The trial court did not note any type of incompetency as defined by North Carolina General Statute Section 35A-1101(7). *See generally In re M.S.E.*, 378 N.C. 40, 44, 859 S.E.2d 196, 203 (2021) ("An 'incompetent adult' is defined as one 'who lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property whether the lack of capacity is due to mental illness, intellectual disability, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or similar cause or condition.' N.C.G.S. § 35A-1101(7) (2019).").

GAL.

The trial court did not address the requirements of North Carolina General Statute Section 7B-602, which provides that "[a]t the first hearing, the court *shall* dismiss the provisional counsel if the respondent parent . . . [h]as retained counsel." N.C. Gen. Stat. § 7B-602(a)(3) (emphasis added). Whether the trial court took this statute in account or not, the trial court's stated reason for denying Mr. Elsayed's request to represent Mother was his failure to comply with the requirement of the Local Rules applicable to court-appointed attorneys for abuse, neglect, or dependency cases. Whether the trial court's denial of Mother's motion to substitute counsel was based on a misapprehension of law that Mr. Elsayed must have a certain level of experience in A/N/D court before being allowed to represent Mother or whether the trial court simply failed to comply with the statutory mandate of North Carolina General Statute Section 7B-602, the trial court erred by not allowing Mother to be represented by her retained counsel. For this reason, we must vacate the Pre-adjudication and Adjudication Order and Disposition Order.

## III.    Conclusion

As the trial court erred by failing to comply with North Carolina General Statute Section 7B-602(a) and to allow Mother to be represented by her retained counsel, we vacate the Pre-adjudication and Adjudication Order and the Disposition Order and remand for further proceedings. On remand, upon the request of any party, the trial court shall hold a hearing to consider whether Mother is still in need

of a Rule 17 GAL and if the trial court determines Mother is still in need of a Rule 17 GAL, the trial court shall enter an order with findings of fact to support its conclusion of law.

VACATED.

Judges FLOOD and STADING concur.