STATE OF NORTH CAROLINA v. MONTARIO ANTWOND GLENN

No. COA11-1488

(Filed 5 June 2012)

**1. Appeal and Error—preservation of issues—failure to raise specific argument**

The trial court did not err in a felony possession of cocaine case by denying defendant's motion to dismiss for insufficient evidence. Although the indictment alleged that defendant possessed .1 grams of cocaine while the State's evidence showed that defendant possessed only .03 grams of cocaine, defendant failed to raise a specific argument at trial regarding dismissal based on a fatal variance and the argument was waived on appeal. Further, in its discretion, the Court of Appeals reviewed the argument and found it had no merit.

**2. Attorneys—request to remove court-appointed attorney—complaints not sufficient for removal—sufficient inquiry—no ineffective assistance**

The trial court did not abuse its discretion in a possession of cocaine case by failing to conduct a meaningful inquiry into defendant's complaints regarding his court-appointed attorney and denying defendant's requests to remove his attorney. Defendant's complaints regarding his dissatisfaction with his attorney's work and trial strategy were not a sufficient basis for the appointment of substitute counsel. None of the circumstances surrounding these complaints were such as to render defense counsel's assistance ineffective.

**3. Jury—contact with police officer witnesses—inadvertent, brief, and harmless—motion for mistrial properly denied**

The trial court did not err by denying defendant's motion for a mistrial in a felony possession of cocaine case where three law enforcement officers who were witnesses in the case walked through the jury assembly room in the presence of some jurors. The contact was inadvertent, brief, and ultimately harmless.

Appeal by defendant from amended judgment entered on or about 9 June 2011 by Judge Joseph N. Crosswhite in Superior Court, Rowan County. Heard in the Court of Appeals 4 April 2012.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General E. Burke Haywood, for the State.*

*Michael E. Casterline, for defendant-appellant.*

STROUD, Judge.

Montario Antwond Glenn ("defendant") appeals from convictions for felony possession of cocaine and attaining the status of habitual felon. For the following reasons, we find no error in defendant's trial.

## I. Background

On 27 August 2007, defendant was indicted for one count of felony possession with intent to sell and/or deliver cocaine, committing an offense while on pretrial release, and attaining the status of habitual felon. Defendant was tried on these charges at the 6 June 2011 Session of Criminal Court, Rowan County. The State's evidence tended to show that on 9 January 2007 Detective C.M. Walker with the

Kannapolis Police Department went to defendant's residence to serve a warrant for defendant's arrest. Detective Walker knocked on the door, identified himself to defendant, and defendant opened the front door and "then [defendant] just kind of nonchalantly turned and walked away from [Detective Walker] ____ walked into the apartment away from [him]." While talking with defendant, Detective Walker followed defendant into the apartment. While Detective Walker explained to defendant that he had a warrant for his arrest, he noticed that defendant was moving something around in his hand, which led Detective Walker to believe defendant was trying to conceal something. As he approached defendant, Detective Walker told defendant to put his hands behind his back, but defendant began "flail[ing] his arms, not as if he was trying to hurt [Detective Walker] but as if he were trying to prevent [him] from placing [defendant] under arrest." Detective Walker got defendant to the ground and radioed for assistance. He was then able to put handcuffs on defendant and place him under arrest. Before the struggle, Detective Walker thought he heard "a rustling noise[,]" like a plastic baggie in defendant's hand but, once defendant was in custody, he could not locate anything on the floor around defendant. Detective Roth arrived at the scene about five minutes after Detective Walker's call for assistance. Detective Walker explained the situation to him and they both could not locate anything on the floor around defendant in the apartment. Detective Walker then sat defendant in a chair, asked him to open his mouth, and noticed something in defendant's mouth. Detective Roth then told defendant that if he did not open his mouth he would spray him with pepper spray. Defendant then spit two plastic baggies out of his mouth, containing what appeared to be cocaine. It was Detective Walker's concern that if defendant ingested drugs he would become sick or die. Detective Roth then collected the two baggies, put them in a sealed plastic bag, and Detective Walker turned the plastic bag over to the police station's evidence property storage area. The plastic baggies were sent for analysis. Jennifer Lindley, a forensic drug chemist with the North Carolina State Bureau of Investigation, testified that the packages taken from defendant contained 0.03 grams of cocaine hydrochloride.

Defendant did not present any evidence at trial. On 8 June 2011, a jury found defendant guilty of felony possession of cocaine. On 9 June 2011, a jury found that defendant had attained the status of habitual felon. On the same day, the trial court sentenced defendant to a term of 80 to 105 months imprisonment. Defendant gave notice

of appeal in open court. On appeal, defendant contends that (1) the trial court erred in denying his motions to dismiss for insufficiency of the evidence; (2) the trial court failed to conduct a meaningful inquiry into his complaints regarding his trial counsel and erroneously denied his requests to remove his court-appointed attorney; (3) the trial court erred in not declaring a mistrial; and (4) his habitual felon status should be declared void since the underlying conviction for felony possession of cocaine was in error.

## II. Motion to dismiss

**[1]** Defendant contends that the trial court erred in denying his motions to dismiss, as there was insufficient evidence to support his conviction for felony possession of cocaine. Defendant argues that there was a "fatal variance" in the indictment, as it alleged that he "did possess .1 grams of Cocaine" and the State's evidence which showed that he was in possession of only 0.03 grams of cocaine. Defendant contends that even though this fact was not necessary for a conviction for possession of cocaine, the State chose to allege it in their indictment, the State was required to and failed to prove this fact, and therefore, the trial court erred in denying his motion to dismiss.

We note that defense counsel raised a motion to dismiss at the close of the State's evidence but when asked whether he wanted to be heard on that motion, defense counsel stated, "I'll rest my argument on the evidence heard by the Court, Your Honor." The trial court denied defendant's motion. Defense counsel stated that defendant would not be presenting any evidence. Out of the presence of the jury, the State made the following statement regarding the indictment:

[The STATE]: Yes. Your Honor, there's—in the court file I see there's an indictment in this case. The body—language of the indictment is possession of cocaine, which is what he is charged with. But there's surplusage in the title. It is not possession with intent. It's just possession of cocaine. I want to make sure that everybody is aware of that and that's just a mistake. But the actual body and language of the indictment is correct. It is just possession of cocaine.

THE COURT: Okay. Which would be a Class I felony?

[THE STATE]: Yes. And the calendar reflects incorrectly, also, because it's reflecting that title. So it's really just possession of cocaine.

THE COURT: Yes, sir.

In response, defense counsel made the following statement:

> [DEFENSE COUNSEL]: Judge, I think the substantive language of the indictment indicates the underlying—just the possession of cocaine. I don't believe there has been any evidence of possession with intent. If the State were to elect to proceed with —on a possession with intent, we'd have a motion regarding the language of the indictment. But I think they can overcharge in an indictment. I just don't think they can undercharge and try to charge—[.]

The trial court informed the parties that he was allowing the indictment to be amended "to reflect the Class I possession of a controlled substance." Defendant did not raise any objection to this amendment. Defense counsel then renewed his motion to dismiss at the close of all evidence, stating that he was "rely[ing] on the same facts of the case, Your Honor." The trial court again denied his motion and moved to the jury charge conference.

"[A] fatal variance between the indictment and proof is properly raised by a motion for judgment as of nonsuit or a motion to dismiss, since there is not sufficient evidence to support the charge laid in the indictment." *State v. Faircloth*, 297 N.C. 100, 107, 253 S.E.2d 890, 894 (citations omitted), *cert. denied*, 444 U.S. 874, 62 L.Ed. 2d 102 (1979). "A motion to dismiss [for a variance] is in order when the prosecution fails to offer sufficient evidence the defendant committed the offense charged." *State v. Waddell*, 279 N.C. 442, 445, 183 S.E.2d 644, 646 (1971). "A variance between the criminal offense charged and the offense established by the evidence is in essence a failure of the State to establish the offense charged." *Id.* Here, the record does not contain any argument at trial by defense counsel that the charges should be dismissed because there was a fatal variance between the indictment and evidence presented. We have recently stated that

> [g]enerally, "error may not be asserted upon appellate review unless the error has been brought to the attention of the trial court by appropriate and timely objection or motion." N.C. Gen. Stat. § 15A-1446(a) (2009); N.C.R. App. P. (10)(a)(1). Objections must "stat[e] the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. (10)(a)(1). "Failure to make an appropriate and timely motion or objection constitutes a waiver of the

right to assert the alleged error on appeal . . . ." N.C. Gen. Stat. § 15A-1446(b).

*State v. Edmonds*, ____ N.C. App. ____, ____, 713 S.E.2d 111, 114 (2011). As the above portions of the transcript show, defense counsel's only objection regarding the indictment was whether the State was going to pursue the charge of possession with intent, which the State ultimately did not pursue. Since defendant failed to raise a specific argument regarding dismissal based on a fatal variance at trial, those arguments have been waived on appeal. *See id.* However in our discretion, we have reviewed this issue and find it has no merit.

### III. Substitute counsel

**[2]** Defendant next contends that "the trial court erred when it failed to conduct a meaningful inquiry and denied [his] repeated requests to remove his court-appointed attorney."

In *State v. Covington*, our Supreme Court stated that

[t]he right to the assistance of counsel and the right to face one's accusers and witnesses with other testimony are guaranteed by the Sixth Amendment to the Federal Constitution which is made applicable to the States by the Fourteenth Amendment, and by Article I, Sections 19 and 23 of the Constitution of North Carolina. The right to the assistance of counsel includes the right of counsel to confer with witnesses, to consult with the accused and to prepare his defense.

*State v. Cradle*, 281 N.C. 198, 207, 188 S.E.2d 296, 302 (1972) (citations omitted). Errors arising pursuant to the United States Constitution are presumed prejudicial unless the appellate court finds that the error was harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443(b) (2007). "The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." *Id.* Our Supreme Court applies this principle to errors arising pursuant to the North Carolina Constitution. *State v. Bunch*, 363 N.C. 841, 844, 689 S.E.2d 866, 868 (2010) (quoting *State v. Huff*, 325 N.C. 1, 33, 381 S.E.2d 635, 654 (1989), *sentence vacated on other grounds*, 497 U.S. 1021, 111 L. Ed. 2d 777 (1990)).

205 N.C. App. 254, 256, 696 S.E.2d 183, 185 (2010). "Absent a showing of a [S]ixth [A]mendment violation", we review the denial of a motion to appoint substitute counsel under an abuse of discretion standard. *State v. Hutchins*, 303 N.C. 321, 336, 279 S.E.2d 788, 798 (1981) (citation omitted).

While it is a fundamental principle that an indigent defendant in a serious criminal prosecution must have counsel appointed to represent him, *Gideon v. Wainwright*, 372 U.S. 335, 9 L.Ed. 2d 799 (1963), an indigent defendant does not have the right to have counsel of *his choice* appointed to represent him. This does not mean, however, that a defendant is never entitled to have new or substitute counsel appointed. A trial court is constitutionally required to appoint substitute counsel whenever representation by counsel originally appointed would amount to denial of defendant's right to effective assistance of counsel, that is, when the initial appointment has not afforded defendant his constitutional right to counsel.

*State v. Thacker*, 301 N.C. 348, 351-52, 271 S.E.2d 252, 255 (1980) (citations and footnote omitted) (emphasis in original). "Substitute counsel is required and must be appointed when defendant shows good cause, such as a conflict of interest or a complete breakdown in communications." *State v. Nelson*, 76 N.C. App. 371, 373, 333 S.E.2d 499, 501 (1985) (citations omitted), *aff'd as modified on other grounds*, 316 N.C. 350, 341 S.E.2d 561 (1986). On the other hand,

when it appears to the trial court that the original counsel is reasonably competent to present defendant's case and the nature of the conflict between defendant and counsel is not such as would render counsel incompetent or ineffective to represent *that* defendant, denial of defendant's request to appoint substitute counsel is entirely proper.

*Thacker*, 301 N.C. at 352, 271 S.E.2d at 255 (citations omitted) (emphasis in original). General dissatisfaction or disagreement over trial tactics is not a sufficient basis to appoint new counsel. *See State v. Prevatte*, 356 N.C. 178, 216, 570 S.E.2d 440, 461 (2002) (noting that "[a]n indigent defendant has no right to replace appointed counsel merely because the defendant is dissatisfied with the present attorney's work or because of a disagreement over trial tactics."), *cert. denied*, 538 U.S. 986, 155 L.Ed. 2d 681 (2003).

Specifically, defendant contends that he repeatedly informed the judge that his defense counsel was not "doing a good job representing his interests, and that he had had very little contact with [defense counsel] before trial" and "he wasn't sure [defense counsel] had his best interest at heart." Defendant contends that "[t]he trial court did not conduct a serious and focused inquiry into the nature of the conflict between" defendant and defense counsel and "was unable to

ascertain whether the conflict was so severe that it would render counsel incompetent or ineffective to represent that defendant." (emphasis omitted). Defendant concludes that this failure to investigate amounted to an abuse of discretion, this violation of his constitutional rights was presumed prejudicial, and his conviction should be reversed as the State cannot show that this error was "harmless beyond a reasonable doubt."

Here, defendant makes no argument regarding any conflict of interest. *See Nelson*, 76 N.C. App. at 373, 333 S.E.2d at 501. The trial transcript shows that at two separate times during his trial defendant voiced his desire to hire new counsel and have his appointed counsel dismissed. However, a thorough review of the transcript shows that a majority of defendant's complaints were directed towards defense counsel's choice of trial strategy or defendant's general dissatisfaction with defense counsel. As to trial strategy, defendant complained that defense counsel was trying to coerce him into taking a plea bargain, had only spent 50 hours working on his case, and, on the second day, it appears that he was unhappy with defense counsel's cross-examination of Detective Walker. In voicing his general dissatisfaction, defendant stated that he felt defense counsel "hasn't really been representing me the best way that his—that I feel like he can[;]" defense counsel did not have "his best interest at heart[;]" and defendant felt the "he [had not] really done nothing [sic] for [him]." As noted above, complaints regarding defendant's dissatisfaction with a defendant's trial counsel's work or trial strategy are not a sufficient basis for the appointment of substitute counsel. *See Prevatte*, 356 N.C. at 216, 570 S.E.2d at 461.

As to defendant's complaints regarding a lack of communication with his trial counsel, we note that defendant on the first day of trial complained that he had not seen his counsel prior to trial "like once every eight months." On the second day of trial, there was an outburst by defendant in open court while he was conferring with defense counsel during the cross-examination of Detective Walker, indicating that there were some communication difficulties between defendant and his trial counsel. Even so, we find nothing in the record to show that "the nature of the conflict between defendant and counsel [was] . . . such as would render counsel incompetent or ineffective to represent" defendant. *See Thacker*, 301 N.C. at 352, 271 S.E.2d at 255. The transcript shows that after defendant voiced his complaints there were several instances where the trial court stopped the trial or recessed the trial early so that defendant could confer with defense

counsel. Even after defendant complained during cross examination of Detective Walker that he was not receiving "a fair trial," the trial court stopped the trial and gave defendant time to talk with defense counsel before bringing in the jury; when cross-examination resumed, defense counsel indicated that after conferring with defendant he had specific questions from defendant to ask the witness. Therefore, we cannot say that there was a "complete breakdown in communications"[,] see Nelson, 76 N.C. App. at 373, 333 S.E.2d at 501, which would justify the appointment of substitute counsel.

As to defendant's arguments regarding the trial court's inquiry into defendant's request for substitute counsel, we note that the Thacker Court expressly rejected the defendant's argument "that failure to make a detailed inquiry [into an alleged conflict with appointed counsel] amounts to a per se violation of defendant's right to counsel." 301 N.C. at 353, 271 S.E.2d at 255 (emphasis added). Our Supreme Court held that "when faced with a claim of conflict and a request for appointment of substitute counsel, the trial court must satisfy itself only that present counsel is able to render competent assistance and that the nature or degree of the conflict is not such as to render that assistance ineffective." Id. at 353, 271 S.E.2d at 256. Here, as noted above, defendant twice requested substitute counsel. In the first instance, defendant's concerns were based on a disagreement as to defense counsel's trial strategy, a lack of communication between defendant and defense counsel, and defendant's general dissatisfaction with defense counsel. After hearing defendant's concerns, the State argued that appointment of substitute counsel would not be appropriate as defense counsel had been "work[ing] diligently" on defendant's case, including filing motions on his behalf, and another attorney would just delay the case. We note that defense counsel had filed two pre-trial motions on behalf of defendant. The trial court agreed with the comments from the State, and further noted that the case was five years old, that he had handled many cases with defense counsel, and that defense counsel was "very experienced" and "very competent." The trial court denied defendant's motion and gave them an opportunity to "talk among yourselves."

On the second day of trial, defendant again voiced his dissatisfaction with defense counsel's representation, stated that he wanted to hire his own lawyer, claimed that he was not getting a fair trial, and disagreed with defense counsel's trial strategy regarding the questions defense counsel was asking Detective Walker on cross-examination. The trial court, after listening to defendant's concerns, told defendant that

defense counsel had "tried a lot of cases, and he's practiced law a long time. So I do want to encourage you to listen to his advice about what can be asked and what can't be asked." The trial court then stopped the trial and gave defendant time to talk with defense counsel before bringing in the jury. In both instances, the trial court made sufficient inquiry to determine that the nature of the conflicts were defendant's general dissatisfaction with defense counsel, communication problems, and trial strategy. None of the circumstances surrounding these complaints, as determined above, were such as to render defense counsel's assistance ineffective. The trial court also voiced his confidence in defense counsel, noting his competence, trial experience, and diligent work on defendant's case. Therefore, having learned "that present counsel [was] able to render competent assistance and that the nature or degree of the conflict [was] not such as to render that assistance ineffective[,]" *see Thacker*, 301 N.C. at 353, 271 S.E.2d at 256, the trial court did not abuse its discretion in denying defendant's motions for substitute counsel.

## IV. Mistrial

**[3]** Defendant next contends that "the trial court erred in not declaring a mistrial when three law enforcement officers walked through the jury assembly room in the presence of some jurors." Defendant argues that the trial court should have conducted an inquiry with jurors pursuant to N.C. Gen. Stat. § 15A-1211(b) to determine if the contact by the officers had been prejudicial to defendant, as these were three witnesses for the State. Defendant concludes that it was error for the trial court not to grant his motion for a mistrial "because the integrity of this verdict is in doubt" due to these officers "marching through [the] jury room" and there "was no way to know what the impact of this event might be on the objectivity of the jurors."

Generally, "the trial court possesses broad discretionary powers to conduct a fair and just trial." *State v. Garcell*, 363 N.C. 10, 44, 678 S.E.2d 618, 639 (citation and quotation marks omitted), *cert. denied*, ____ U.S. ____, 175 L.Ed. 2d 362 (2009). N.C. Gen. Stat. § 15A-1061 states, in pertinent part, that

[u]pon motion of a defendant or with his concurrence the judge may declare a mistrial at any time during the trial. The judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case.

N.C. Gen. Stat. § 15A-1061 (2007). But "[n]ot every disruptive event which occurs during trial automatically requires the court to declare a mistrial." *State v. Allen*, 141 N.C. App. 610, 617, 541 S.E.2d 490, 496 (2000) (citation omitted), *disc. review denied and appeal dismissed*, 353 N.C. 382, 547 S.E.2d 816 (2001). "Our standard of review when examining a trial court's denial of a motion for mistrial is abuse of discretion." *State v. Simmons*, 191 N.C. App. 224, 227, 662 S.E.2d 559, 561 (2008) (citation omitted). We find that the case before us is analogous to *State v. Washington*, 141 N.C. App. 354, 540 S.E.2d 388 (2000), *disc. review denied*, 353 N.C. 396, 547 S.E.2d 427 (2001).

In *Washington*, the defendant argued that "the trial court erred by not declaring a mistrial *sua sponte* after a bailiff entered the jury room during deliberations." *Id.* at 375, 540 S.E.2d at 402 (footnote omitted). This Court stated that

> [a]ppellate courts are deferential to the trial court's exercise of discretion in this area because a " 'trial judge is in a better position to investigate any allegations of misconduct, question witnesses and observe their demeanor and make appropriate findings.' " *State v. Rutherford*, 70 N.C. App. 674, 677, 320 S.E.2d 916, 919 (1984) (citation omitted).

> "Misconduct must be determined by the facts and circumstances of each case . . . ." *Id.* " 'The circumstances must be such as not merely to put suspicion on the verdict, because there was opportunity and a chance for misconduct, but that there was in fact misconduct. When there is merely matter of suspicion, it is purely a matter in the discretion of the presiding judge.' " [*State v. Sneeden*, 274 N.C. 498, 504, 164 S.E.2d 190, 195 (1968)](quoting *Lewis v. Fountain*, 168 N.C. 277, 279, 84 S.E. 278, 279 (1915)).

> The great weight of authority sustains the rule that . . . a verdict will not be disturbed because of a conversation between a juror and a stranger when it does not appear that such conversation was prompted by a party, or that any injustice was done to the person complaining, and he is not shown to have been prejudiced thereby, and this is true of applications for new trial by the accused in a criminal case as well as of applications made in civil actions. . . . [A]nd if a trial is really fair and proper, it should not be set aside because of mere suspicion or appearance of irregularity which is shown to have done no actual injury. Generally speaking, neither the common law nor statutes contemplate as ground for a new trial a conversation between a juror and a third ·

person unless it is of such a character as is calculated to impress the case upon the mind of the juror in a different aspect than was presented by the evidence in the courtroom, or is of such a nature as is calculated to result in harm to a party on trial. The matter is one resting largely within the discretion of the trial judge.

*Id.* (alteration in original) (citation omitted).

*Id.* at 376-77, 540 S.E.2d at 403. In concluding that there was no abuse of discretion as "there was no misconduct affecting the jury" and overruling the defendant's argument, this Court stated that

the evidence showed that when the intrusion by the bailiff became known to the court, the trial judge put the bailiff under oath, determined that the bailiff had, without authorization of the court, knocked on the door of the jury room, that he did so because another bailiff had asked him to retrieve some magazines for defendant, that the bailiff said nothing to the jurors and the jurors said nothing to him, and that he heard no deliberations and had no other contact with the jurors. Neither the State nor defendant accepted the court's invitation to make further inquiry of the bailiff, and defendant did not then seek a mistrial.

*Id.* at 377, 540 S.E.2d at 403.

Likewise here, the record shows no misconduct affecting the jury. Defense counsel raised a motion for mistrial on the second day of trial stating that three police officers and witnesses in the trial, Detective Walker, Detective Roth and Officer Ruth Steward, had walked through the jury assembly room on their way to court that morning and two members of the jury were in that room. After hearing arguments from both sides, the trial court stated that the contact with jurors was "inadvertent" as there was no conversation between the officers and the jurors and denied the motion for mistrial. Subsequently, defense counsel requested that the officers tell what happened under oath. The officers stated that they were told to be in the courtroom by 9:15 a.m. to talk with the prosecutor but because the courtroom door was locked, the officers sought access to the courtroom through what they thought was the grand jury room. However, this room, which had previously been used as the grand jury room, was now being used as the jury assembly room; they did not notice the sign indicating that it was the jury assembly room. There was no conversation with jurors and, even though they noticed a woman coming out of the bathroom and another man standing in the room, they did not make eye contact with them and quickly exited

the room. Like the baliff in *Washington*, the officers here said nothing to the jurors, the jurors made no comments to the officers, and the officers did not even make eye contact with the jurors. The contact was inadvertent, brief, and ultimately harmless. Also, we note that unlike *Washington*, in which the contact was made during jury deliberations, here the contact was in the jury assembly room before trial on the second day. Because defendant's arguments point to a "mere suspicion or appearance of irregularity" but the record shows "no actual injury" by the officers' contact with the jurors, *see Washington*, 141 N.C. App. at 376-77, 540 S.E.2d at 403, we will not set aside the verdict and hold that the trial court did not abuse its discretion in denying defendant's motion for a mistrial. We need not address defendant's argument regarding his habitual felon status as that argument is based on errors in his conviction for possession of cocaine. However, we find no error in defendant's trial for possession of cocaine.

For the foregoing reasons, we find no error in defendant's trial.[1]

NO ERROR.

Judges HUNTER, Robert C. and ERVIN concur.

---

1. On 26 April 2012, defendant filed a *pro se* motion "for appropriate relief from his current sentence." However, as noted above, defendant is represented by appellate counsel in this appeal. Our Supreme Court has stated that "[h]aving elected for representation by appointed defense counsel, defendant cannot also file motions on his own behalf or attempt to represent himself. Defendant has no right to appear both by himself and by counsel." *State v. Grooms*, 353 N.C. 50, 61, 540 S.E.2d 713, 721 (2000) (citations omitted), cert. denied, 534 U.S. 838, 151 L.Ed. 2d 54 (2001); *see State v. Parton*, 303 N.C. 55, 61, 277 S.E.2d 410, 415 (1981) (stating that "a party has the right to appear *in propria persona* or, in the alternative, by counsel" but "[t]here is no right to appear both *in propria persona* and by counsel."), *overruled on other grounds by State v. Freeman*, 314 N.C. 432, 437-38, 333 S.E.2d 743, 746-47 (1985); N.C. Gen. Stat. § 1-11 (2007). As there is no indication in the record that defendant's appellate counsel has withdrawn from his representation of defendant, we dismiss defendant's *pro se* motion.