IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1030

Filed 17 September 2025

Mecklenburg County, No. 23CR305044-590

STATE OF NORTH CAROLINA

v.

VINCENT LAURICA CHAFEN, Defendant.

Appeal by Defendant from judgment entered 22 March 2024 by Judge Clifton H. Smith in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 June 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Kimberly D. Potter, for the State.*
>
> *Assistant Public Defender Julie Ramseur Lewis, for defendant-appellant.*

STADING, Judge.

Vincent Laurica Chafen ("Defendant") appeals from final judgment entered upon a jury verdict convicting him of assault on a government official. Defendant maintains the trial court should have sua sponte ordered a competency hearing, erroneously determined he waived the right to be present at trial, and erroneously failed to appoint substitute counsel. For the reasons below, we discern no error.

## I. Background

On 12 May 2023, the Charlotte-Mecklenburg Police Department ("CMPD") obtained an arrest warrant for Defendant, charging him with: (1) assault on a government official or employee; (2) resisting a public officer; (3) second-degree trespass; and (4) misuse of the 911 system. Defendant's district court trial commenced on 6 December 2023, where he was convicted of assault on a government official and resisting a public officer. The district court consolidated the offenses and sentenced Defendant to seventy-five days of imprisonment, suspended for twelve months of supervised probation. Following entry of judgment, Defendant appealed to the superior court division.

Defendant's superior court trial commenced on 19 March 2024. At the outset, the State voluntarily dismissed the charges for resisting a public officer, misuse of the 911 system, and second-degree trespass. The State solely proceeded against Defendant for assault on a government official or employee. After the jury was empaneled but before the State called its first witness, Defendant expressed frustration with his court-appointed attorney ("court-appointed attorney" or "defense counsel") and moved the trial court for substitute counsel:

> DEFENDANT: I would like to ask that I get another attorney. I don't want to go to trial today. . . . I don't want to go to trial with her. I don't want her representing me, no.
>
> THE COURT: Well, at this point, the trial has begun.

DEFENDANT: Well . . . I'm going to file for insufficient counsel. . . . I do not want her to represent me.

THE COURT: All right. Well --

DEFENDANT: I don't think that would be in my best interest.

In response, the trial court noted several observations it had made, including the fact that Defendant refused to participate with his court-appointed attorney, notwithstanding the attorney's efforts:

> THE COURT: I have noticed at various times this morning when your counsel has attempted to speak with you, you have turned and faced the opposite direction - -
>
> DEFENDANT: Yes.
>
> THE COURT: -- so as to not . . . engage in conversation with the attorney that has been appointed to represent you. And that all those times that I've noticed, you have not wanted to participate with your attorney, despite her efforts to participate and ask you questions. Certainly you have that option to represent yourself if you desire to do so.
>
> DEFENDANT: Absolutely not.
>
> THE COURT: Is there --
>
> DEFENDANT: What I would . . . like to say, Your Honor, is this, and I think that's being disingenuous. The times that I . . . offer my opinion to her to ask her something, she . . . was just like she just, "What? What do you want?" And I choose not to say that to her when she asked me a couple of times. She asked me twice some questions and . . . I was like, just go along with her. A couple of times I did answer her when . . . she asked for my opinion about a juror, and I said yes, I would like to (indiscernible) -- I'm cool with it. But it's a couple of times I didn't respond to her at all because I don't like the way she respond to me when I ask

a question. And that's why I say I do not want her representing me. I don't think it's in my best interest.

The trial court ultimately concluded, "there is good cause . . . to continue this case with the current representation of [Defendant]," highlighting the fact that his court-appointed attorney had more than forty years of experience. In response, Defendant refused to participate in his trial any further and was taken into custody under a secured bond:

> DEFENDANT: I suggested some things that I wanted her to do for me, she refused to do those things, and, like I said, . . . I'm not going forward. I believe y'all can have a trial and I (indiscernible) y'all to handle it. I'm homeless, I'm a homeless guy. I'm not letting her represent me. I'm not going to do it. . . . I'm leaving. So do with it what you will. I'm leaving.
>
> THE COURT: All right. So – what kind of bond is he[ ] currently under?
>
> DEFENDANT: I don't care. I'm homeless, man. I've been sleeping on a bench for five months.
>
> . . . .
>
> [THE STATE]: Give me one moment, Your Honor. I believe . . . it was $2,500 secured.
>
> THE COURT: At this time, I will revoke his bond and I would issue a new bond at $10,000 secured. And we'll be in recess until 2:00 o'clock.

The trial court then recessed for lunch.

Following the lunch recess, the trial court requested Defendant's presence several times to no avail. Deputy Hagan with the Mecklenburg County Sheriff's

Office told Defendant, "[t]he judge is ordering you to come into the courtroom[,]" to which Defendant stated, "No." In light of Defendant's refusal to return or participate, the trial court requested that defense counsel speak with Defendant. The trial court asked defense counsel to ensure that Defendant understood "he has a right to waive his presence during the trial," and that the trial court "will let him go back to his cell if he does not want to participate in trial." But Defendant refused to speak with his court-appointed attorney at this time. Sergeant Jake Knight with the Mecklenburg County Sheriff's Office also attempted to convey the trial court's message, but Sergeant Knight relayed, "he's not coming out of the cell and he said he's not coming in here." Given Defendant's refusals, the trial court concluded he voluntarily waived his right to be present at trial, and the State proceeded with its first witness.

The evidence at Defendant's superior court trial tended to show that officers with CMPD arrested him at Novant-Presbyterian Hospital on 12 May 2023 after he was banned from the premises and refused to leave. Throughout the course of the night and early morning, authorities responded to three different 911 calls originating from the hospital. Law enforcement received the first call around 11:09 p.m. from Defendant, who was in the waiting room at the hospital seeking treatment. Defendant told the 911 operator, "he didn't want to be at the hospital"; he "wanted to go to another hospital"; and "they weren't taking care of him."

Captain L.D. Randolph Goodman, a paramedic crew chief and assistant operations supervisor with the Mecklenburg Emergency Medical Services Agency,

responded to the disturbance. Captain Goodman testified that Defendant was angry, yelling, cursing, and being uncooperative. Captain Goodman told Defendant: "[A]n ambulance would not be transporting him to another facility, that he's at a facility being seen." Christian Murillo, a patrol officer with CMPD, also responded to the disturbance. Officer Murillo similarly testified "that they were not going to transport [Defendant] to another hospital due to him already being at Novant Presbyterian." After speaking with Defendant, Captain Goodman left the scene.

Around 12:49 a.m., law enforcement responded to the second 911 call from the hospital's location—this time, "in reference to an accident" in front of the hospital. Several CMPD officers responded to the call, including Officer Murillo, Officer Elijah Morrison, and Officer Robert Rendon. Officer Morrison testified that Defendant claimed to have been "hit by a car." As a result, Defendant "was taken [back] to the hospital for evaluation by a medic[.]" Yet, upon examining the scene, Officer Rendon concluded that nobody had actually been struck by a vehicle.

About an hour-and-a-half later, around 3:00 a.m., CMPD responded to the third 911 call from the hospital's location—Officers Murillo, Morrison, and Rendon responded to the disturbance. This time, the hospital requested assistance with removing Defendant from the premises because he refused to leave. Upon arrival, Officer Morrison observed Defendant on a stretcher "right in front of the [emergency room] doors," complaining that "his leg hurt and . . . he wasn't seen by a doctor." However, Officer Morrison saw a discharge order in Defendant's possession. And

when discussing with nearby medical personnel, Officer Morrison learned Defendant's "leg wasn't broken." He also learned that one of the security employees from the hospital banned Defendant from the premises. Upon learning Defendant had been banned, Officer Murillo testified: "I gave him the opportunity to stand up and leave. He refused to leave so I then placed him under arrest for second-degree trespassing."

Defendant did not willingly submit to the arrest. Instead, Officer Murillo carried Defendant into the back of his patrol vehicle with the assistance of other officers. Officer Murillo noted that when he and other officers attempted to place Defendant in the patrol vehicle, Defendant "kept locking out his body . . . and legs." And when the officers attempted to lift Defendant's legs, he "locked [them] out . . . [and] refused to bend them." After several attempts, Officer Murillo successfully bent Defendant's leg at the knee. But upon doing so, Defendant "kicked out and struck [Officer Murillo] in the head twice."

Following deliberations, the jury returned a guilty verdict for assault on a government official. The trial court sentenced Defendant to 120 days imprisonment, and Defendant timely entered his notice of appeal.

## II. Jurisdiction

This Court has jurisdiction over Defendant's appeal pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) ("From any final judgment of a superior court . . . .") and 15A-1444(a) (2023) ("A defendant who has entered a plea of not guilty to a criminal charge,

and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered.").

## III. Analysis

Defendant contends the trial court violated his constitutional right to due process by failing to sua sponte order a competency hearing since "substantial evidence existed creating a bona fide doubt as to [his] competency to stand trial." He also asserts the trial court committed error by concluding that he waived the right to be present at trial and by failing to conduct a sufficient inquiry into his request for substitute counsel.

## A. Competency Hearing

Defendant maintains there was substantial evidence establishing a bona fide doubt as to his competency to stand trial because he informed the trial court that he was homeless, and there is "a correlation . . . between homelessness and mental illness"; arrived late to court and stated "he did not care what happened to him"; refused to be represented by or speak to his court-appointed trial attorney; refused to attend his trial or participate in his defense; demonstrated "irrational and bizarre behavior . . . on the night in question"[1]; and acted irrationally at sentencing. Defendant did not raise the question of competency at trial. Instead, he asserts the

---

[1] "Regardless of the circumstances that constitute substantial evidence of a defendant's incompetence, the relevant period of time for judging a defendant's competence to stand trial is 'at the time of trial.'" *State v. Hollars*, 376 N.C. 432, 442, 852 S.E.2d 135, 142 (2020) (citation omitted).

trial court should have sua sponte initiated a competency hearing. We disagree.

"The standard of review for alleged violations of constitutional rights is de novo." *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009) (emphasis omitted). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (citations and quotation marks omitted) (emphasis omitted).

"One of the fundamental pillars of our criminal justice system is that a defendant must be competent to stand trial." *State v. Jones*, 296 N.C. App. 512, 516, 909 S.E.2d 373, 376 (2024). "The Due Process Clause of the Constitution of the United States shields criminal defendants who are incompetent to stand trial for charges levied against them by the State from being compelled to do so while they remain incompetent." *Hollars*, 376 N.C. at 441, 852 S.E.2d at 141–42; *State v. Badgett*, 361 N.C. 234, 259, 644 S.E.2d 206, 221 (2007) (citations and quotation marks omitted) ("[U]nder the Due Process Clause of the United States Constitution, [a] criminal defendant may not be tried unless he is competent."); *Cooper v. Oklahoma*, 517 U.S. 348, 354, 116 S. Ct. 1373, 1376 (1996) (citations omitted) ("[T]he criminal trial of an incompetent defendant violates due process.").

To that end, N.C. Gen. Stat. § 15A-1001(a) (2023) contains "a statutory competency requirement." *Jones*, 296 N.C. App. at 516, 909 S.E.2d at 376. Subsection 15A-1001(a) provides:

No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner.

N.C. Gen. Stat. § 15A-1001(a). "The question of the capacity of the defendant to proceed may be raised at any time on motion by the prosecutor, the defendant, the defense counsel, or the court." *Id.* § 15A-1002(a). "When the capacity of the defendant to proceed is questioned, the court shall hold a hearing to determine the defendant's capacity to proceed." *Id.* § 15A-1002(b)(1).

Generally, a defendant waives his right to a competency hearing under N.C. Gen. Stat. § 15A-1002(b) if he fails to raise a question as to his capacity at trial. *See, e.g., Jones*, 296 N.C. App. at 516, 909 S.E.2d at 376 (citation omitted) ("[T]he statutory right to a competency hearing is waived by the failure to assert that right at trial."); *Badgett*, 361 N.C. at 259, 644 S.E.2d at 221 (citation omitted) ("In applying these statutory provisions, this Court has recognized that the trial court is only required to 'hold a hearing to determine the defendant's capacity *if* the question is raised.'"); *State v. King*, 353 N.C. 457, 466, 546 S.E.2d 575, 585 (2001) (determining that the "defendant waived his statutory right to a competency hearing under N.C.G.S. § 15A-1002(b) by his failure to assert that right.").

However, even if a defendant fails to raise a question about his capacity, "[a] trial court has a constitutional duty to institute, *sua sponte*, a competency hearing *if*

*there is substantial evidence before the court* indicating that the accused may be mentally incompetent." *Badgett*, 361 N.C. at 259, 644 S.E.2d at 221 (citations and quotation marks omitted); *King*, 353 N.C. at 467, 546 S.E.2d at 585; *State v. Young*, 291 N.C. 562, 568, 231 S.E.2d 577, 581 (1977); *State v. Allen*, 377 N.C. 169, 181, 856 S.E.2d 494, 503 (2021); *State v. Heptinstall*, 309 N.C. 231, 236, 306 S.E.2d 109, 112 (1983). "In enforcing this constitutional right, the standard for competence to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Badgett*, 361 N.C. at 259, 644 S.E.2d at 221 (citations and quotation marks omitted).

Generally, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Minyard*, 289 N.C. App. 436, 442, 890 S.E.2d 182, 187 (2023) (citation omitted). "Substantial evidence which establishes a bona fide doubt as to a defendant's competency may be established by considering 'a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial.'" *Hollars*, 376 N.C. at 442, 852 S.E.2d at 142 (quoting *Drope v. Missouri*, 420 U.S. 162, 180, 95 S. Ct. 896, 908 (1975)).[2] "Regardless of the circumstances that constitute substantial evidence

---

[2] "[T]he issue of whether substantial evidence of a defendant's lack of capacity exists so as to require a sua sponte competency hearing requires a fact-intensive inquiry that will hinge on the unique circumstances presented in each case." *State v. Sides*, 376 N.C. 449, 466, 852 S.E.2d 170, 181 (2020).

of a defendant's incompetence, the relevant period of time for judging a defendant's competence to stand trial is 'at the time of trial.'" *Hollars*, 376 N.C. at 442, 852 S.E.2d at 142 (citation omitted). "Moreover, even when the defendant is deemed competent to stand trial at the commencement of the proceedings circumstances may arise during trial suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Allen*, 377 N.C. at 181, 856 S.E.2d at 504 (citations and quotation marks omitted). But, the mere presence of "evidence tending to show that the defendant has exhibited certain signs of mental disorder in the past or has engaged in what might be deemed unusual behavior during trial does not necessarily require the trial court to inquire into the defendant's competence to proceed on its own motion." *Id.* at 182, 856 S.E.2d at 504.

Contrary to Defendant's urging, there is insufficient evidence in this case to have warranted the initiation of a competency hearing by the trial court. Our review leads us to conclude that Defendant was able "to consult with his lawyer with a reasonable degree of rational understanding and ha[d] a rational as well as factual understanding of the proceedings against him." *Badgett*, 361 N.C. at 259, 644 S.E.2d at 221 (citations and quotation marks omitted).

Although Defendant arrived late to court, he immediately apologized and provided an explanation: that he lacked the "means or money" to transport himself to court since he was homeless at the time. The fact that Defendant was homeless—without more—is insufficient to warrant an inquiry into his competency by the trial

court.  *Cf. Hollars*, 376 N.C. at 442, 852 S.E.2d at 142.  Defendant concedes as much in his brief, noting the following: "While this information, standing alone, was not enough to require a hearing in this case, it is relevant in conjunction with other evidence in the record suggesting incompetence."

Defendant also argues there was a bona fide doubt he was competent to stand trial since "he did not care what happened to him and would gladly accept whatever punishment he received."  However, Defendant's statement was made in the following context:

> DEFENDANT: I'm leaving.  So do with it what you will. I'm leaving.
>
> THE COURT: All right. So . . . what kind of bond is he[ ] currently under?
>
> DEFENDANT: I don't care. I'm homeless, man.  I've been sleeping on a bench for five months.
>
> [DEFENDANT'S ATTORNEY]: I think it's unsecured but I don't know . . . .
>
> [STATE'S ATTORNEY]: Give me one moment, Your Honor.  I believe . . . it was $2,500 secured.

After Defendant was taken into custody, Sergeant Knight relayed to the trial court:

> It's his wish that he not have to speak to his counsel anymore.  He doesn't want anything to do with her.  He . . . said she was condescending and disrespectful and that he was a homeless, 49-year-old man and all he wanted to do was get a . . . bed.
>
> . . . .
>
> He also said that whatever sentencing and/or ruling that

came down, he said he's fine with it one way or another.

Defendant's argument is contextually misplaced. In any event, "[t]he mere existence of evidence tending to show that the defendant has . . . engaged in what might be deemed unusual behavior during trial does not necessarily require the trial court to inquire into the defendant's competence to proceed on [its] own motion." *Allen*, 377 N.C. at 182, 856 S.E.2d at 504.

Defendant next asserts a bona fide doubt existed as to his competency because, at sentencing, he informed the trial court about a previous mental health evaluation:

> THE COURT: Anything else you would like to say at this time, [Defendant]?
>
> DEFENDANT: Yeah. I got some stuff in my property, but y'all . . . already know my situation. So it's not something that's not really documented. I went to Novant Health or whatever the hospital is. I went through the whole process myself to get a screening and evaluation. I went . . . to someplace called Holly Hillis. And I got paperwork and everything that document that. So we're wasting time here.

Immediately thereafter, Defendant noted he was "able-bodied" and that his mind was "sound." Defendant also expressed he was homeless since the charges prevented him from securing stable employment. Further, Defendant added he desired to "take care of these . . . cases [so he] c[ould] get on with [his] life." Even though Defendant discussed his psychological history at sentencing, nothing he said suggested he was suffering from a condition that would render him incompetent to stand trial; he merely discussed a previous time where he received a mental health evaluation. *See*

*Badgett*, 361 N.C. at 261, 644 S.E.2d at 222 ("We observe that defendant called three experts to testify about his psychological history, yet none of them suggested that he suffered from a condition that would render him incompetent to stand trial. Though the record confirms that defendant was treated for anger management and depression prior to trial, this is insufficient to establish a lack of competency."); *see also King*, 353 N.C. at 467, 546 S.E.2d at 585 (holding that evidence of the defendant receiving treatment for depression and suicidal tendencies several months before trial did not constitute substantial evidence that the defendant lacked the requisite capacity to stand trial); *see also Allen*, 377 N.C. at 182, 856 S.E.2d at 504 ("[T]he fact that a defendant has received mental health treatment in the past . . . does not, without more, suffice to require the trial court to undertake an inquiry into the defendant's competence on the trial court's own motion."). These statements therefore do not constitute substantial evidence indicating concerns of incompetency. *See Hollars*, 376 N.C. at 442, 852 S.E.2d at 142.

Defendant also maintains there existed a bona fide doubt as to his competency because at sentencing, he "volunteer[ed] information in support of a prior record level point." In calculating Defendant's prior record level, the district attorney presented a sentencing worksheet that contained several previous felony convictions he received, including one from 1992. The district attorney noted that defense counsel specifically took issue with the 1992 conviction since Defendant was sixteen years old at the time of the offense. Defendant interjected, conceding: "Yeah, I was tried as an

adult, but I was 16." The trial court then responded, "Well you certainly have a right to remain silent. Anything you say may be used against you, just to remind you of that." Although volunteering information that could enhance one's conviction is certainly out of the ordinary, unusual behavior—standing alone—does not "require the trial court to undertake an inquiry into the defendant's competence on the trial court's own motion." *Allen*, 377 N.C. at 182, 856 S.E.2d at 504. This interaction thus does not constitute substantial evidence creating a bona fide doubt as to Defendant's competency to stand trial.

Finally, viewing the entire transaction in context, Defendant's refusal to participate in his trial or with his court-appointed attorney does not constitute substantial evidence requiring the trial court to institute a competency hearing on its own accord; Defendant's refusals were merely a product of frustration with his court-appointed attorney for personal reasons. Indeed, Defendant requested substitute counsel in light of the fact that his court-appointed attorney "seem[ed] . . . upset" when he asked any form of question. He also expressed a desire for substitute counsel because his court-appointed attorney "refused to do" certain things he asked. Yet during a colloquy with the trial court, Defendant admitted that he "turned and faced the opposite direction" several times when his court-appointed attorney tried to speak with him. He also conceded that he refused to speak with his court-appointed attorney despite the fact that the attorney had attempted to ask questions: "But it's a couple of times I didn't respond to her at all because I don't like the way she respond

to me when I ask a question. And that's why I say I do not want her representing me." Thus, it appears that Defendant's refusal to cooperate was due to the fact that he did not get along with his court-appointed attorney as opposed to a lack of competence.

In any event, our Supreme Court's decision in *State v. Badgett* provides further guidance. 361 N.C. 234, 644 S.E.2d 206 (2007). In that case, the defendant asserted the trial court should have ordered a competency hearing on its own accord since he:

> (1) wrote numerous letters to the trial court and the district attorney expressing his desire for a speedy trial resulting in a death sentence; (2) read a statement to the jury during the penalty phase in which he impliedly asked for a death sentence; and (3) had an emotional outburst coupled with verbal attacks on the assistant district attorney who delivered the state's closing argument during the sentencing proceeding.

*Id.* at 259–60, 644 S.E.2d at 221. The Court disagreed, concluding "that the evidence referenced by defendant did not constitute 'substantial evidence' requiring the trial court to institute a competency hearing, and that this evidence was outweighed by substantial evidence indicating that [the] defendant was competent to stand trial." *Id.* at 260, 644 S.E.2d at 221. The Court determined that the defendant "was able to interact appropriately with his attorneys during the trial"; conferred with his attorneys "on issues of law applicable to his case"; "followed their advice by declining to testify"; "responded directly and appropriately to questioning . . . throughout the trial"; "demonstrated a strong understanding of the proceedings against him";

"consistently addressed the trial court with appropriate deference and intelligent responses"; and "calmly and rationally explained" why he was upset. *Id.* at 260–61, 644 S.E.2d at 221–22.

Here, as in *Badgett*, the evidence referenced by Defendant does not constitute substantial evidence and is "outweighed by substantial evidence indicating [he] was competent to stand trial." *Id.* at 260, 644 S.E.2d at 221. When Defendant moved for substitute counsel, he demonstrated appropriate deference, delivered intelligent responses, and responded directly to the trial court's questions. In turn, the trial court noted several observations it had made, including the fact that Defendant refused to participate with his court-appointed attorney notwithstanding the attorney's efforts. Defendant acknowledged that he had in fact refused to speak with his attorney several times, but only because he did not "like the way she respond[ed] to [him] when [he] ask[ed] a question." Otherwise, Defendant admitted that he was able to interact with his attorney and participate in his trial, including telling his court-appointed attorney his opinion about certain prospective jurors. The trial court also notified Defendant he had the right to represent himself, he had the right to control certain aspects of representation including whether to plead guilty or not, and that his court-appointed lawyer had the ability to control matters pertaining to "trial strategy." In response, Defendant declined proceeding pro se; instead, articulating a desire "to get the paperwork to file for insufficient counsel." At all times, Defendant maintained, "I do not want [my court-appointed attorney] representing me. I don't

think it's in my best interest."

The evidence detailed above showcases that Defendant: was capable of interacting with his court-appointed attorney at times; conferred with his court-appointed attorney on legal issues, including jury selection; sometimes accepted his court-appointed attorney's advice; understood the nature of the proceedings against him; understood his rights as they relate to appointed and substitute counsel; and "calmly and rationally explained" why he was upset with his court-appointed attorney when the trial court disagreed.  *Id.* at 260–61, 644 S.E.2d at 221–22; *see also Jones*, 296 N.C. App. at 518, 909 S.E.2d at 377–78.  Thus, even though Defendant's emotional outburst and refusal to participate in his trial may be "unusual," *Allen*, 377 N.C. at 182, 856 S.E.2d at 504, "the evidence referenced by defendant did not constitute 'substantial evidence' requiring the trial court to institute a competency hearing, and . . . this evidence was outweighed by substantial evidence indicating that [he] was competent to stand trial." *Badgett*, 361 N.C. at 260, 644 S.E.2d at 221. For all of these reasons, we hold there is insufficient evidence establishing a bona fide doubt as to Defendant's competency to stand trial, and as such, the trial court did not commit error by failing to sua sponte inquire into Defendant's competence. Defendant's assignment of error is overruled.

## B.  Right to be Present

Defendant next asserts the trial court committed error by concluding he voluntarily waived the right to be present before determining whether he was

competent to stand trial.  We disagree.

"We review the trial court's conclusion that Defendant voluntarily waived [the] constitutional right to be present *de novo.*"  *State v. Sides*, 267 N.C. App. 653, 660, 834 S.E.2d 146, 151 (2019), *rev'd and remanded on other grounds*, 376 N.C. 449, 852 S.E.2d 170 (2020).  "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."  *State v. Hicks*, 243 N.C. App. 628, 641, 777 S.E.2d 341, 350 (2015) (citation omitted).

"The Confrontation Clause in Article I, Section 23 of the North Carolina Constitution 'guarantees an accused the right to be present in person at every stage of his trial.'"  *State v. Workman*, 344 N.C. 482, 497, 476 S.E.2d 301, 309 (1996) (quoting *State v. Payne*, 320 N.C. 138, 139, 357 S.E.2d 612, 612 (1996)); *State v. Jefferson*, 288 N.C. App. 257, 261–62, 886 S.E.2d 180, 183 (2023) ("The right of the defendant to be present at criminal proceedings is protected by both the federal and state constitutions.").  "This right to be present extends to all times during the trial when anything is said or done which materially affects defendant as to the charge against him."  *State v. Wright*, 212 N.C. App. 640, 644, 711 S.E.2d 797, 800 (2011) (citation omitted).

"[A]lthough a criminal defendant possesses a constitutional right to be present at all stages of her trial, the United States Supreme Court has . . . recognized the potential for a defendant in a non-capital case to waive that right."  *State v. Sides*, 376 N.C. 449, 458, 852 S.E.2d 170, 177 (2020); *State v. Pope*, 257 N.C. 326, 330, 126

S.E.2d 126, 129 (1962) ("In every criminal prosecution it is the right of the accused to be present throughout the trial, unless he waives the right. And in capital trials the right cannot be waived by the prisoner."). To that end:

> [W]here the offense is not capital and the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present and leaves the court free to proceed with the trial in like manner and with like effect as if he were present.

*Sides*, 376 N.C. at 458, 852 S.E.2d at 177 (citation omitted). Thus, "[a] defendant may waive the general right to be present at his trial through his voluntary and unexplained absence from court." *Jefferson*, 288 N.C. App. at 262, 886 S.E.2d at 183 (citation omitted).

"[I]n order to waive the right to be present, however, the defendant 'must be aware of the processes taking place, of his right and of his obligation to be present, and he must have no sound reason for remaining away.'" *Sides*, 376 N.C. at 458, 852 S.E.2d at 177 (citation omitted). Phrased another way, "in order to waive the right to be present, there must be 'an intentional relinquishment or abandonment' of that right." *Id.* at 458–59, 852 S.E.2d at 177 (citation omitted). Where "there is substantial evidence suggesting that a defendant may lack the capacity to stand trial, then a sufficient inquiry into her competency is required before the trial court is able to conclude that she made a voluntary decision to waive her right to be present at the

trial through her own conduct." *Id.*

Here, the trial court concluded that Defendant voluntarily waived his right to be present after he left the courtroom and refused to return. Defendant asserts the trial court erroneously reached this conclusion because it failed to first determine whether he was competent to stand trial. But since we have already held there was insufficient evidence warranting the initiation of a sua sponte competency hearing by the trial court, and that Defendant waived his statutory right to a competency hearing under N.C. Gen. Stat. § 15A-1002(b) by failing to assert it at trial, Defendant's argument is meritless. *Jones*, 296 N.C. App. at 516, 909 S.E.2d at 376.

In any event, we hold the trial court did not commit error by concluding that Defendant voluntarily waived the right to be present. After Defendant's trial had begun "in his presence" and the trial court denied his request for substitute counsel, he voluntarily chose to not participate any further and to leave the courtroom. *Sides*, 376 N.C. at 458, 852 S.E.2d at 177. In the courtroom, Defendant stated to the trial court: "I'm not going forward. I believe y'all can have a trial and . . . handle it . . . . I'm not going to do it. . . . I'm leaving. So do with it what you will. I'm leaving." Notwithstanding, the trial court made several efforts to bring Defendant back to the courtroom. We also note the efforts of Deputy Hagan, Sergeant Knight, and his court-appointed attorney. The trial court entered an order noting it "previously verbally ordered [Defendant] to come into the courtroom through a deputy," and gave written notice to Defendant that he "is ordered to come into this courtroom so that these

matters may be discussed with him and allow him meaningful participation in his trial." Defendant was thus "aware of the processes taking place, of his right and of his obligation to be present, and . . . ha[d] no sound reason for remaining away.'" *Sides*, 376 N.C. at 458, 852 S.E.2d at 177 (citation omitted). Accordingly, the trial court did not err in concluding that Defendant intentionally abandoned his right to be present at trial. Defendant's assignment of error is overruled.

## C. Substitute Counsel

Defendant last contends the trial court violated his constitutional right to counsel by failing to conduct a sufficient inquiry into his request for substitute counsel. More specifically, he maintains the trial court failed to determine "whether the nature or degree of the conflict between [him] and his defense counsel was such that substitute counsel should [have been] appointed." Alternatively, Defendant maintains the trial court abused its discretion by denying his request for substitute counsel since there was "a complete and irreconcilable breakdown in communication[.]" We disagree.

"Unless a Sixth Amendment violation is shown, whether to appoint a different lawyer for an indigent criminal defendant who expresses dissatisfaction with his court-appointed counsel is a matter committed to the sound discretion of the district court." *State v. Sweezy*, 291 N.C. 366, 371–72, 230 S.E.2d 524, 529 (1976) (citation omitted); *State v. Hutchins*, 303 N.C. 321, 336, 279 S.E.2d 788, 798 (1981); *State v. Covington*, 205 N.C. App. 254, 256, 696 S.E.2d 183, 185 (2010). "Abuse of discretion

results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

"An indigent defendant's right to appointed counsel in a criminal prosecution is guaranteed by both the North Carolina Constitution and the Sixth Amendment to the United States Constitution." *State v. Holloman*, 231 N.C. App. 426, 429, 751 S.E.2d 638, 641 (2013); *State v. Strickland*, 283 N.C. App. 295, 302, 872 S.E.2d 594, 601 (2022). The right to appointed counsel, "however, does not 'include the privilege to insist that counsel be removed and replaced with other counsel merely because defendant becomes dissatisfied with his attorney's services.'" *Strickland*, 283 N.C. App. at 302, 872 S.E.2d at 601 (citation omitted); *State v. Thacker*, 301 N.C. 348, 351–52, 271 S.E.2d 252, 255 (1980) (internal citation omitted) ("While it is a fundamental principle that an indigent defendant in a serious criminal prosecution must have counsel appointed to represent him, an indigent defendant does not have the right to have counsel *of his choice* appointed to represent him.").

"A trial court is constitutionally required to appoint substitute counsel whenever representation by counsel originally appointed would amount to denial of defendant's right to effective assistance of counsel, that is, when the initial appointment has not afforded defendant his constitutional right to counsel." *Thacker*, 301 N.C. at 352, 271 S.E.2d at 255. "In order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest, a

complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *Sweezy*, 291 N.C. at 372, 230 S.E.2d at 529 (citations omitted); *State v. Glenn*, 221 N.C. App. 143, 149, 726 S.E.2d 185, 189 (2012) (citation omitted) ("Substitute counsel is required and must be appointed when defendant shows good cause, such as a conflict of interest or a complete breakdown in communications."). "In the absence of any substantial reason for replacement of court-appointed counsel, an indigent defendant must accept counsel appointed by the court, unless he desires to present his own defense." *State v. Robinson*, 290 N.C. 56, 65, 224 S.E.2d 174, 179 (1976) (citation omitted).

If it appears to "the trial court that the original counsel is reasonably competent to present defendant's case and the nature of the conflict between defendant and counsel is not such as would render counsel incompetent or ineffective to represent *that* defendant, denial of defendant's request to appoint substitute counsel is entirely proper." *Thacker*, 301 N.C. at 352, 271 S.E.2d at 255. "Once it becomes apparent that the assistance of counsel has not been rendered ineffective, the trial judge is not required to delve any further into the alleged conflict." *State v. Poole*, 305 N.C. 308, 311–12, 289 S.E.2d 335, 338 (1982). A "trial court's sole obligation when faced with a request that counsel be withdrawn is to make sufficient inquiry into defendant's reasons to the extent necessary to determine whether defendant will receive effective assistance of counsel." *Id.* "If a court refuses to inquire into a seemingly substantial complaint about counsel when he has no reason

to suspect the bona fides of the defendant, or if on discovering justifiable dissatisfaction a court refuses to replace the attorney, the defendant may then properly claim denial of his Sixth Amendment right." *Sweezy*, 291 N.C. at 372, 230 S.E.2d at 529.

Contrary to Defendant's urging, the trial court inquired into Defendant's request "to the extent necessary" to determine whether he would receive effective assistance of counsel. *Poole*, 305 N.C. at 311–12, 289 S.E.2d at 338. Indeed, in investigating the complaint, the trial court first asked Defendant whether he had "turned and faced the opposite direction" while defense counsel tried to communicate with him. Defendant acknowledged this observation as true, noting that he did not respond to defense counsel several times because he did not "like the way [defense counsel] respond[ed]." Yet at other times, Defendant admitted he was capable of communicating with defense counsel about prospective jurors: "A couple of times I did answer her when . . . she asked for my opinion about a juror." At this juncture, the trial court learned that "the nature of the conflict between defendant and counsel [was] not such as would render counsel . . . ineffective to represent" him. *Thacker*, 301 N.C. at 352, 271 S.E.2d at 255. It also "had ample information before it to conclude that [D]efendant had no real basis for wanting his counsel withdrawn." *Poole*, 305 N.C. at 317, 289 S.E.2d at 341. Moreover, Defendant's complaints were "general and vague, and the emphasis of his objections shifted during the hearing." *State v. Gray*, 292 N.C. 270, 281, 233 S.E.2d 905, 913 (1977).

Thereafter, the trial court inquired into defense counsel's competency by asking how long she had been practicing law and in what field. *See Thacker*, 301 N.C. at 353, 271 S.E.2d at 256. Once it became apparent to the trial court that defense counsel was competent and the assistance of defense counsel was not "ineffective," it was "not required to delve any further into the alleged conflict." *Poole*, 305 N.C. at 311–12, 289 S.E.2d at 338. The trial court thus conducted the requisite inquiry and did not violate Defendant's Sixth Amendment right. *Cf. Sweezy*, 291 N.C. at 372, 230 S.E.2d at 529 ("If a court refuses to inquire into a seemingly substantial complaint about counsel when he has no reason to suspect the bona fides of the defendant, . . . the defendant may then properly claim denial of his Sixth Amendment right."); *Covington*, 205 N.C. App. at 257, 696 S.E.2d at 185 ("Denying a defendant's request for substitute counsel based upon his current counsel's communication and trial strategy does not automatically amount to a violation of the defendant's constitutional rights."). Although Defendant "may have been peeved with his attorney for personal reasons," the trial court "had no reason to doubt that attorney's effectiveness and capability as an advocate or to suspect the relationship between [D]efendant and his counsel to have deteriorated so as to prejudice the presentation of his defense." *Gray*, 292 N.C. at 282, 233 S.E.2d at 913.

Moreover, the trial court did not abuse its discretion by denying Defendant's request for substitute counsel. *See Covington*, 205 N.C. App. at 258, 696 S.E.2d at 186 ("Because defendant's constitutional rights were not violated, the trial court's

decision whether to allow substitute counsel was discretionary, and . . . it did not abuse its discretion by denying defendant's request."). Defendant initially framed his request under the guise of disapproval with how defense counsel responded to his questions: "But it's a couple of times I didn't respond to her at all because I don't like the way she respond to me when I ask a question. And that's why I say I do not want her representing me." But Defendant later revealed his request for substitute counsel primarily stemmed from a disagreement over defense counsel's trial tactics:

> I suggested some things that I wanted her to do for me, she refused to do those things, and, like I said, . . . I'm not going forward. I believe y'all can have a trial and I (indiscernible) y'all to handle it. . . . I'm not letting her represent me. I'm not going to do it. . . . I'm leaving. So do with it what you will. I'm leaving.

Precedent dictates that "[a] mere disagreement between the defendant and his court-appointed counsel as to trial tactics is not sufficient to require the trial court to replace court-appointed counsel with another attorney." *Robinson*, 290 N.C. at 66, 224 S.E.2d at 179; *Thacker*, 301 N.C. at 353, 271 S.E.2d at 255; *Glenn*, 221 N.C. App. at 149, 726 S.E.2d at 189; *State v. Prevatte*, 356 N.C. 178, 216, 570 S.E.2d 440, 461 (2002). The trial court thus acted within the bounds of its discretion upon denying Defendant's motion for substitute counsel. Defendant's final assignment of error is overruled.

## IV. Conclusion

Our review leads us to conclude that the trial court did not commit error by

failing to sua sponte conduct a competency hearing or by concluding that Defendant voluntarily waived his constitutional right to be present. Additionally, the trial court conducted the requisite inquiry when addressing Defendant's motion for substitute counsel and did not abuse its discretion in denying the motion.

NO ERROR.

Judges GRIFFIN and FREEMAN concur.